COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

UNPUBLISHED

ROBERT TAYLOR, III

v.      Record No. 2137-14-3

ROANOKE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 15, 2015

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Charles N. Dorsey, Judge

(L. Brad Braford, on brief), for appellant.  Appellant submitting on
brief.

(Peter S. Lubeck, Assistant County Attorney; Luke D. Jennings,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Robert Taylor, III (father) appeals an order terminating his parental rights and approving the

goal of adoption for his child, E.T.  Father argues that the trial court erred when it found there was

sufficient evidence to terminate his parental rights pursuant to Code § 16.1-283(C)(2) and to

approve the goal of adoption.  Upon reviewing the record and briefs of the parties, we conclude that

the trial court did not err.  Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Dawn Boyd (mother) are the parents of a child, E.T., who was born in 2006. Father and mother were never married, and the child lived with father. Father has six other children, three of whom had been living with him and E.T. in 2012.

In December 2012, the Roanoke County Department of Social Services (the Department) became involved with the family.[1] The Department received a call regarding allegations of abuse and neglect by father. The oldest child living in the home was placed in foster care. The two middle children were placed with their mother, who received custody of them in May 2013. The youngest child, E.T., continued to live with father with a safety plan in place. The Department provided services to father, including counseling and medication management.

On August 26, 2013, the Department received a child protective services (CPS) complaint, which alleged that E.T. had been sexually abused by a family friend. Father told the child not to tell anyone about the abuse; however, on August 30, 2013, father told the child's counselor. Father admitted that he knew the family friend was a registered sex offender, but father allowed him to care for E.T. The child was placed in the care of father's sister and her husband, Teresa and Cory Hoyt. On September 26, 2013, the Hoyts told the Department that they were unable to care for the child. Since there were no other available relatives to care for the child, the child was placed in foster care.

The Department recommended that father participate in a parental capacity evaluation and attachment assessment. Dr. Robert Lanahan conducted the parental capacity evaluation in November 2013.[2] Sharon Brammer subsequently conducted the attachment assessment. Both

---

[1] Father had been receiving ongoing services from the Montgomery County and Roanoke City Departments of Social Services since 2002.

[2] Dr. Lanahan also conducted a parental capacity evaluation for father in 2010.

Dr. Lanahan and Brammer had concerns about the child being placed with father. Father continued to receive mental health services and medication management.

In May 2014, the Department filed a petition for termination of father's parental rights. On June 2, 2014, the City of Salem Juvenile and Domestic Relations District Court (the JDR court) terminated father's parental rights and approved the goal of adoption for E.T. Father appealed the matter to the circuit court.[3]

On September 25, 2014, the parties appeared before the circuit court. After hearing the evidence and argument, the circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2) and approved the goal of adoption for the child.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Father argues that the evidence was insufficient to terminate his parental rights and approve the goal of adoption. He contends he complied with all of the recommended services. He participated in the evaluations by Dr. Lanahan and Brammer. He completed a parenting class. He regularly visited with the child. He presented testimony from Jerry Hoffman, who was his mental health support worker or "skill builder," and Marcus Jones, who was his therapist. Both testified that the child appeared to be well taken care of by father. Father contends the trial court erred by terminating his parental rights.[4]

---

[3] The JDR court also terminated mother's parental rights to the child. Mother appealed to the circuit court, which terminated her parental rights pursuant to Code § 16.1-283(C)(1).

[4] In father's opening brief, he mentions that his sister, Gloria Matthews, and his cousin, Helen Caldwell, filed petitions for custody of the child and that the custody matters were pending

- 3 -

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

The Department acknowledges that father "put forth efforts to comply with services recommended to him;" however, the evidence proved that he was unable to remedy substantially the conditions which led to the child being placed and remaining in foster care. In his November 2013 report, Dr. Lanahan concluded that he "cannot fathom any circumstance where it would be in the best interest of [the child] to be placed into the care of her father at this time. . . . [S]erious concerns exist whether he will be able to possess the resources now or within the foreseeable future to be a competent parent." At trial, Dr. Lanahan testified, "It is my impression that through no fault of his own Mr. Taylor has been severely exposed to a set of circumstances that leave him in a position where he does not possess the skills, nor will he be able to develop such skills, to minimally parent his daughter."

Likewise, in her report, Brammer concluded that father "exhibits little ability to recognize and respond to [the child's] developmental and attachment needs" and "is not an appropriate placement for his daughter." At trial, she explained that there were no services available for father that would change her opinion that he was not suitable to care for his child.

---

in the JDR court. An interstate home study had been ordered for his sister's case. Father contends the circuit court should have "at a minimum" continued the case in order to allow the custody matters to proceed in the JDR court. Father provided no legal argument as to why the circuit court judge was required to continue the case, so this Court will not address his arguments. Rule 5A:20(e).

There was evidence that father had significant mental health deficiencies that impacted his parenting abilities. As of the trial, he did not have custody of any of his seven children. E.T., the child whom is the subject of this appeal, was removed from father's custody in September 2013. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Father had been receiving services for many years, but he was unable to remedy substantially the conditions that led to the child being placed, and remaining, in foster care. Contrary to father's arguments, the evidence supports the trial court's findings.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.